U.S. DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
RECEIVED

NOV - 7 2019

TONY R. MOORE, CLERK
BY _____
                    DEPUTY

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE WESTERN DISTRICT OF LOUISIANA**

CLINTON STRANGE,

Plaintiff

v.                                          **5:19-cv-1455**


HANCOCK WHITNEY BANK;

a Mississippi Domestic Profit Corporation

HANCOCK WHITNEY CORPORATION;

a Mississippi Domestic Profit Corporation

&

LYNWARD JAMES ANGELLE, JR.,

a Louisiana Licensed Attorney

Defendants


**CIVIL ACTION COMPLAINT**

**FOR VIOLATIONS OF:**

**THE FAIR DEBT COLLECTION PRACTICES ACT OF 1978;**

**THE TELEPHONE CONSUMER PROTECTION ACT OF 1991;**

**&**

**TORT DAMAGES UNDER:**

**LOUISIANA CIVIL CODE ARTICLE 2315;**

**&**

**THE LOUISIANA UNFAIR TRADE PRACTICES ACT OF 1972**

**Jury Trial Demanded**

## PRELIMINARY STATEMENT:

1. This is an action brought in good faith by an adult individual against Defendants HANCOCK WHITNEY BANK ("HWB"), a Mississippi Domestic Profit Corporation; HANCOCK WHITNEY CORPORATION ("HWC") a Mississippi Domestic Profit Corporation, and LYNWARD JAMES ANGELLE, JR. ("ANGELLE") a Louisiana Licensed Attorney, who are herein and collectively the ("Defendants") for alleged violations of both federal laws and state laws as referenced herein. The Plaintiff seeks a maximum award for damages as well as injunctive relief from future violations.

2. HWB acquired MidSouth Bank through a merger on or around October 4, 2019 and HWB is a successor entity and is liable for any damages that MidSouth Bank would have been liable to the Plaintiff for.

3. HWC is the parent company of HWB.

## JURISDICTION & VENUE:

4. Jurisdiction arises in this U.S. District Court under Federal Questions pursuant to 28 U.S.Code § 1331.

5. Supplemental Jurisdiction could and should be exercised by this U.S. District Court over Plaintiff's closely tied and related State Law claims in the interest of Judicial Economy pursuant to 28 U.S.Code § 1367.

6. Venue lies proper in this U.S. District because the Defendants can all be found within this U.S. District, and the alleged misconduct giving rise to this action occurred in and were directed at the Plaintiff and or his property within this U.S. District pursuant to 28 U.S.Code § 1391.

**THE PARTIES:**

7. Plaintiff CLINTON STRANGE is an adult individual residing at the address of:

CLINTON STRANGE

7021 WINBURN DRIVE

GREENWOOD, LA 71033

8. Defendant HANCOCK WHITNEY BANK is a Mississippi Domestic Profit Corporation that does business in Louisiana. According to the Louisiana Secretary of State this Defendant can be served at the address of:

CT CORPORATION SYSTEM

c/o: HANCOCK WHITNEY BANK

3867 PLAZA TOWER DRIVE

BATON ROUGE, LA 70816

9. HANCOCK WHITNEY CORPORATION is a Mississippi Domestic Profit Corporation. According to the Mississippi Secretary of State this Defendant can be served at the address of:

CT CORPORATION SYSTEM

c/o: HANCOCK WHITNEY CORPORATION

645 LAKELAND EAST DRIVE

SUITE 101

FLOWOOD, MS 39232

10. LYNWARD JAMES ANGELLE, JR. is a Louisiana Licensed Attorney. During the times that the violative activity allegedly occurred this Defendant could be found and served at the address of:

L. JAY ANGELLE, JR.

102 VERSAILLES BOULEVARD

SUITE 500

LAFAYETTE, LA 70502

**THE FACTUAL ALLEGATIONS:**

**SECTION I:**

**THE ALLEGED VIOLATIONS OF THE FDCPA**

11. On November 14, 2018 Defendant Angelle drafted and signed and dispatched a collection letter (also referred to as a "Dunning Letter") to the Plaintiff and it was postmarked on November 15, 2018 [See Exhibit A].

12. The letter was in reference to a consumer credit card account that Plaintiff had opened with MidSouth Bank that Plaintiff had (used to purchase consumer goods and services) fallen behind on paying.

13. The letter was violative of the Fair Debt Collection Practices Act of 1978 ("FDCPA") in multiple ways that the Plaintiff cites as follows:

    a- There was an "Improper Statement" or demand of the amount owed.

    b- There was an "Overshadowing" of the thirty (30) day notice requirement to dispute and request validation of the debt because the dunning letter included a fifteen day (15) day demand.

    c- No notice of rights to validate and dispute the validity or accuracy of the alleged debt.

    d- The envelope the letter came in was misleading because it did not read MidSouth Bank it read "L. JAY ANGELLE, JR. – ATTORNEY AT LAW". [See Exhibit B].

14. The Seventh Circuit Court of Appeals addressed why it is important to protect against this type of deceptive collection practice by stating: "An unsophisticated consumer, getting a letter from an 'attorney,' knows the price of poker has just gone up. And that clearly is the reason why the dunning campaign escalates from the collection agency,

which might not strike fear in the heart of the consumer, to the attorney, who is better positioned to get the debtor's knees knocking." *See Avila v. Rubin*, 84 F.3d 222, 229 (7th Cir. 1996).

15. On February 22, 2010, the United States Supreme Court declined to hear an appeal from the Fifth Circuit U.S. Court of Appeals on a FDCPA case: *Kay v. Gonzales*, U.S., No. 09-542. In that case the Plaintiff, Jose Gonzalez, received a letter from the Kay Law Firm. The letter, written on law firm letterhead and unsigned, told Gonzalez, "Please be advised that your account, as referenced above, is being handled by this office." On the back of the letter was this statement: "At this point in time, no attorney with this firm has personally reviewed the particular circumstances of your account." Gonzalez sued the Kay Law Firm for violating the FDCPA which prohibits debt collectors from falsely representing or implying that the debt collector is an attorney or that the communication is from an attorney. The dunning letter that Defendant Angelle mailed to the Plaintiff was meant to unduly coerce or intimidate the Plaintiff into paying "whatever" MidSouth Bank demanded, but this ran contrary to Plaintiff's rights under the FDCPA and caused the Plaintiff harm and damages by aggravating his Service-Connected Major Depressive Disorder and the Sixth U.S. Circuit has ruled on this sort of alleged miscreant misbehavior as follows: "The least-sophisticated-consumer test is objective and is designed `to ensure that the FDCPA protects all consumers, the gullible as well as the shrewd."(quoting *Fed. Home Loan Mortgage Corp. v. Lamar,* 503 F.3d 504, 509 (6th Cir.2007). See *Kistner v. Law Offices of Michael P. Margelefsky, LLC,* 518 F.3d 433, 438 (6th Cir.2008).

16. Defendant Angelle's dunning letter violated § 1692e(10), which prohibits "[t]he use of any false representation or deceptive means to collect." 15 U.S.C. § 1692e(10).

**SECTION II:**

**THE ALLEGED VIOLATIONS OF THE TCPA**

17. MidSouth Bank placed a number of Debt Collection calls to the Plaintiff's cellphone. Pursuant to a cardholder agreement, or other agreements Plaintiff had with MidSouth Bank they likely had permission to do so. However, the Plaintiff made a written demand to MidSouth Bank asking them to cease and desist placing calls to the Plaintiff's cellphone number 318-423-5057 via electronic mail on September 2, 2018 at 6:16pm CST and via U.S. Mail which was picked up on (Monday) September 3, 2018) [See Exhibit C].

18. Despite the fact that the Plaintiff made (two) 2 written demands for MidSouth Bank to cease and desist from contacting him by way of his cellular telephone phone they continued to do so.

19. At least two (2) of the calls were placed to the Plaintiff's cellphone without his consent utilizing an Automatic Telephone Dialing System ("ATDS").

20. On or around October 28, 2018 at 8:12am CST the Plaintiff went to make a fuel purchase at a trusted retailer (the Shell Gas Station at 6930 Bert Kouns Ind. Loop., Shreveport, LA 71129) as he had done numerous times before. MidSouth Bank sent him a fraud alert text message to his phone which he now knows was a trick to get him to rescind his Do-Not-Call status by interacting with the text message. Plaintiff represents that the below image is the text message that was sent:



21. The Plaintiff knows that the text message that MidSouth Bank sent to his cellphone was sent utilizing an ATDS with no human contact intervention because (according to the caller ID) a short code was used. The text message was sent on a Sunday when virtually none or absolutely none of the MidSouth Bank employees were working. The Plaintiff represents that the below images are the text message details related to the text message:

 

22. The Plaintiff was harmed and damaged by the text message because the unwanted
communication cost him at least 138 bytes off his mobile data plan which he pays for in
advance through his Verizon cellphone plan.

23. On November 16, 2018 at 11:38am CST Courtney Leblanc with the MidSouth Bank
collections Department sent a text message to the Plaintiff's cellphone via a MidSouth
Bank email server from a computer.

24. The Plaintiff knows that a computer can be defined as an ATDS because the computer
(used to send the unwanted text message) has either an Intel or an "Advance Micro
Devices ("AMD") chip. The connected equipment involved in transmitting the unwanted
communication that was placed to the Plaintiff's cellphone has both the present and
potential capacity to generate random or sequential numbers and dial them.



25. The Plaintiff represents that the below images are the text message details regarding the

above referenced text message.



26. The Plaintiff was harmed and damaged by this unwanted text message spam because it cost the Plaintiff at least 113 bytes of his wireless mobile data plan which he pays for in advance each month through his Verizon Wireless cellular phone plan.

27. The Plaintiff alleges that the unwanted text messages cost him minutes off his Verizon wireless cellphone plan.

28. The U.S. Federal Communications Commission ("FCC") has recognized that "wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used." *In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, CG Docket No. 02-278, Report and Order, 18 F.C.C. Rcd. 14014, 14115 ¶ 165 (2003).

29. The unwanted text messages also on each occasion distracted the Plaintiff from his activities of daily living and caused him to exert a measurable amount of both Physical

and Mental energy to unlock his cellphone, review the contents of the unwanted text messages, and remove them from his waiting message queue.

30. The text messages also temporarily dispossessed the Plaintiff of his movable property. This alleged misconduct (sending unwanted text messages) also caused drainage on the Plaintiff's cellphone battery because each text message caused the Plaintiff's cellphone to "awaken" from rest mode and caused it to illuminate, vibrate, and chime. The Plaintiff had to recharge the drained battery at his own expense.

## SECTION III:
## THE ALLEGED VIOLATIONS OF LOUISIANA LAWS

31. On February 5, 2018 the Plaintiff  obtained a one-year Certificate of Deposit (CD) from MidSouth Bank in the amount of $1000.00 (One Thousand U.S. Dollars) that was to accrue interest at the rate of .35% per annum to be compounded quarterly. The maturity date of the CD was scheduled to be February 5, 2019 [See Exhibit D]

32. The purpose of the Plaintiff obtaining the CD was to try and bolster his business line of credit with MidSouth Bank.

33. On or about February 22, 2018 the Plaintiff obtained a $1000.00 (One Thousand U.S. Dollars) Loan ( No. 100001097362) from MidSouth Bank using the CD as collateral. The Plaintiff paid-off the Loan under good terms on November 21, 2018 at 1:11pm CST [See Exhibit E].

34. On or around November 19, 2018 MidSouth Bank sent (mailed) three (3) separate letters to the Plaintiff notifying him that they were going to close 3 of his checking accounts effective thirty (30) days from November 16, 2018 (the date the of the letter) [See Exhibit F].

35. The effective date of the closure of the Plaintiff's 3 accounts was scheduled for on or about December 15, 2019.

36. The Plaintiff went to the local MidSouth Bank Branch #1091 (in Greenwood, LA) on December 6, 2018 at or around 9:15am CST to withdraw enough funds to pay (a few months in advance) his utilities and mortgage payments until he could obtain a new account (certainly not with MidSouth Bank) for his VA Disability benefits payment to have an account to land in and set up auto drafts for his monthly bills.

37. The Plaintiff was waited on by Ruth Lyrse (the teller) and also present at the bank counter was Sean Gallagher (the branch manager).

38. When the Plaintiff asked to withdraw some of the funds from his accounts Ruth Lyrse saw a "flag" of some sort on her computer screen that prompted her to call to a higher authority (a Doe party) which instructed Ruth Lyrse to liquidate all of the Plaintiff's accounts immediately.

39. Ruth Lyrse complied with Doe's request and liquidated all three (3) of the Plaintiff's checking accounts (ten-days in advance of the scheduled notice that Plaintiff had received via U.S. Mail).

40. When Ruth Lyrse presented the Plaintiff with a liquidation of his CD the Plaintiff refused to sign the acknowledgement of the "Early Withdrawal Form". The Plaintiff demanded that Ruth Lyrse phone the Doe back so he could dispute the liquidation of the CD and the associated penalties for early withdrawal plus the loss of interest that he would have realized in approximately sixty one (61) days.

41. The Doe party refused to be placed on the phone with the Plaintiff citing "he is on the do-not-call list", and when pressed for the identity of the Doe party Ruth Lyrse declined to disclose the Doe's identity.

42. Ruth Lyrse disconnected with the Doe and presented the Plaintiff with a cashier's check for $967.89 (Nine Hundred Sixty Seven Dollars and 89/100ths) at 9:26am CST [See Exhibit G].

43. Plaintiff cashed the cashier's check and left the bank in a very upset mood because MidSouth Bank's actions caused the Plaintiff both Mental and Emotional anguish which further aggravated the Plaintiff's Major Depressive Disorder for which he is being currently treated for by Mental Health Professionals at the Overton Brooks VA Medical Center in Shreveport, Louisiana.

44. Plaintiff alleges that the acts of MidSouth Bank on this particular day were violative of the Louisiana Unfair Trade Practices Act of 1972.

45. The Louisiana Unfair Trade Practices Act of 1972 codified at Louisiana Revised Statute 51: §1401 et seq. is also referred to as [the] "Unfair Trade Practices and Consumer Protection Law".

46. Plaintiff asserts that he is a statutorily defined disabled person under the Act as referenced at La. R.S. 51: §1402(9) which states: "Person with a disability" means a person with a mental, physical, or developmental disability that substantially impairs that person's ability to provide adequately for his own care or protection."

47. Plaintiff asserts that MidSouth Bank had knowledge of the Plaintiff's disabilities prior to and certainly since September 2, 2018 and that their actions aggravated the Plaintiff's

mental disability and symptoms. The Act provides for enhanced damages under the

following subsections at La. R. S. 51: §1407(D) sub- parts 3 and 4 as follows:

> "Whether the elder person or person with a disability was more vulnerable to the defendant's conduct because of age, poor health, infirmity, impaired understanding, restricted mobility, or disability than other persons and whether the elder person or person with a disability actually suffered physical, emotional, or economic damage resulting from the defendant's conduct.
> (4)  Whether the defendant's conduct caused an elder person or person with a disability to suffer any of the following:
> (a)  Mental or emotional anguish."

48. The Act allows for  a Court to impose a civil penalty of up to $5,000 (Five Thousand

U.S. Dollars) under La. R. S. 51: §1407(C) " In addition to any other civil penalty

provided for in this Section, if a person is found by the court to have engaged in any

method, act, or practice in Louisiana declared to be unlawful under this Chapter, and the

violation was committed against an elder person or a person with a disability, as defined

in this Section, the court may impose an additional civil penalty not to exceed five

thousand dollars for each violation.

## SECTION IV:

## THE PLAINTIFF'S HARM AND DAMAGES

49. The Plaintiff suffered harm and damages via telephone harassment via MidSouth Banks

collections Department by their sending or placing at least four (4) calls to the Plaintiff's

cellphone after he told them in writing to cease doing so.

50. The Plaintiff alleges that at least two (2) of these calls / texts were made using an ATDS

to his cellphone without his consent.

51. Plaintiff alleges that MidSouth Bank also placed two (2) harassing debt collection calls in

which voicemails were left after he made the written demands to MidSouth Bank to stop

doing so on October 15, 2018 at 4:54pm CST and on November 16, 2018 at 11:37am

CST the voicemails left during the latter of these calls were transcribed by the Plaintiff [See Exhibit H].



Oct 15, 2018 (Mon) 4:54 PM



Nov 16, 2018 (Fri) 11:37 AM

52. The Plaintiff alleges that he suffered actual damages, and violations of his constitutional rights by the actions of MidSouth Bank.

53. The Plaintiff alleges that MidSouth Bank violated parts of the Louisiana Unfair Trade Practices Law of 1972. The Plaintiff alleges that the Defendants are liable to him for three times his actual damages plus interest and or alternatively $5000.00 in damages for the encounter on December 6, 2018.

54. Louisiana Civil Code Article 2315(A) states: "Every act whatever of man that causes damage to another obliges him by whose fault it happened to repair it."

55. Defendant MidSouth Bank caused damages to the Plaintiff as detailed above.

56. Defendant Angelle caused the Plaintiff damages by [h]is actions and alleged misconduct and is liable to the Plaintiff for damages.


## THE COUNTS & CAUSES OF ACTION:

### COUNT I:

### (Plaintiff v. Angelle)

### 15 U.S. Code § 1692(g)(a)(1)

### Validation of debts (accurate / inaccurate amount)

57. The Plaintiff incorporates the allegations from all previous paragraphs as if fully set forth herein.

58. The Plaintiff alleges that the "dunning letter" violated  aspects of the FDCPA and Plaintiff seeks damages in the amount of up to $1,000.00 per violation at the discretion of the Court.

59. The Plaintiff is entitled to and seeks injunctive relief enjoining the Defendant from further violation of this part.


### COUNT II:

### (Plaintiff v. Angelle)

### 15 U.S. Code § 1692(g)(a)(3)

### Validation of debts lack of dispute (disclosure statement)

60. The Plaintiff incorporates the allegations from all previous paragraphs as if fully set forth herein.

61. The Plaintiff alleges that the "dunning letter" violated  aspects of the FDCPA and Plaintiff seeks damages in the amount of up to $1,000.00 per violation at the discretion of the Court.

62. The Plaintiff is entitled to and seeks injunctive relief enjoining the Defendant from further violation of this part.

## COUNT III:

### (Plaintiff v. Angelle)

### 15 U.S. Code § 1692(f)(8)

### Misleading identity about the "sender" of the Dunning Letter

63. The Plaintiff incorporates the allegations from all previous paragraphs as if fully set forth herein.

64. The Plaintiff alleges that the "dunning letter" violated  aspects of the FDCPA and Plaintiff seeks damages in the amount of up to $1,000.00 per violation at the discretion of the Court.

65. The Plaintiff is entitled to and seeks injunctive relief enjoining the Defendant from further violation of this part.

## COUNT IV:

### (Plaintiff v. Angelle)

### 15 U.S.Code  § 1692e(10)

### Misleading information about the "substance" of the Dunning Letter

66. The Plaintiff incorporates the allegations from all previous paragraphs as if fully set forth herein.

67. The Plaintiff alleges that the "dunning letter" violated  aspects of the FDCPA and Plaintiff seeks damages in the amount of up to $1,000.00 per violation at the discretion of the Court.

68. The Plaintiff is entitled to and seeks injunctive relief enjoining the Defendant from further violation of this part.

## COUNT V:

### (Plaintiff v. HWB)

## VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT OF 1991

### 47 U.S. Code § 227(b)(1)(A)(iii)

### October 28, 2018

69. The Plaintiff incorporates the allegations from all previous paragraphs as if fully set forth herein.

70. Texts and Calls are regarded as the same under the TCPA.

71. The text message in question was undoubtably sent via an ATDS without the prior express written consent of the called party.

72. Defendant HWB is liable to the Plaintiff for a willful and knowing violation because the Plaintiff undeniably revoked his consent to receive calls from MidSouth Bank on September 2, 2018.

73. The Plaintiff is entitled to and seeks injunctive relief enjoining the Defendant from further violation of this part.

## COUNT VI:

### (Plaintiff v. HWB)

## VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT OF 1991

### 47 U.S. Code § 227(b)(1)(A)(iii)

### November 16, 2018

74. The Plaintiff incorporates the allegations from all previous paragraphs as if fully set forth herein.

75. Texts and Calls are regarded as the same under the TCPA.

76. The text message in question was undoubtably sent via an ATDS without the prior express written consent of the called party.

77. Defendant HWB is liable to the Plaintiff for a willful and knowing violation because the Plaintiff undeniably revoked his consent to receive calls from MidSouth Bank on September 2, 2018.

78. The Plaintiff is entitled to and seeks injunctive relief enjoining the Defendant from further violation of this part.

## COUNT VII:

### (Plaintiff v. HWB)

## VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT OF 1991

### 47 U.S. Code § 227(b)(1)(A)(iii)

### Telephone Harassment on October 15, 2018

79. The Plaintiff incorporates the allegations from all previous paragraphs as if fully set forth herein.

80. Here, the Plaintiff alleges that is inference and fact pattern analysis is thin on the allegation of the use of an ATDS to place or initiate this call (to his cellphone ) utilizing an ATDS, but the Plaintiff prays that the Court will note that the name Johnny Smith is so "made up sounding" and so fake that the Plaintiff's claims may be nudged across the line as to be considered plausible on this count.

81. The Plaintiff also prays that the Court will take note of the pattern of "Johnny Smith's collection calls that were placed (on behalf of MidSouth Bank) on the specific dates and times as referenced in ¶ 51.

82. The Plaintiff is entitled to and seeks injunctive relief enjoining the Defendant from further violation of this part.

## CAUSE OF ACTION VIII:

### (Plaintiff v. HWB)

### LOUISIANA CIVIL CODE ARTICLE 2315

### Telephone Harassment on November 16, 2018

83. The Plaintiff incorporates the allegations from all previous paragraphs as if fully set forth herein.

84. The Plaintiff dispatched to MidSouth Bank a written demand to cease and desist from any further telephone communications on September 2, 2018.

85. The Defendant had no permissible purpose to place a call regarding debt collection to the Plaintiff's cellphone after this date.

86. The Plaintiff alleges that this act was a tortious violation of Louisiana Civil Code Article 2315 and constituted harassment by a creditor for which the Plaintiff seeks damages in an amount to be determined by a Court of competent Jurisdiction.

87. The Plaintiff is entitled to and seeks injunctive relief enjoining the Defendant from further violation of this part.

## CAUSE OF ACTION IX:

### (Plaintiff v. HWB)

### The Louisiana Unfair Trade Practices Act of 1972

### Louisiana Revised Statute 51: §1401 et seq.

### Actual Damages for Alleged Misconduct on December 6, 2018

88. The Plaintiff incorporates the allegations from all previous paragraphs as if fully set forth herein.

89. The Plaintiff alleges that MidSouth Bank unlawfully against Louisiana Laws liquidated a CD without the Plaintiff's knowledge, consent, or permission and tried to get Plaintiff to sign a document that made it seem as though [h]e initiated the transaction.

90. This should be deemed as an unfair trade practice by the Court and it should calculate and appropriately award the Plaintiff his actual damages under this Cause of Action.

91. The Plaintiff is entitled to and seeks injunctive relief enjoining the Defendant from further violation of this part.

## CAUSE OF ACTION X:

### (Plaintiff v. HWB)

### The Louisiana Unfair Trade Practices Act of 1972

### Louisiana Revised Statute 51: §1401 et seq.

### Treble Damages for Alleged Misconduct on December 6, 2018

92. The Plaintiff incorporates the allegations from all previous paragraphs as if fully set forth herein.

93. The Plaintiff alleges that MidSouth Bank unlawfully against Louisiana Laws liquidated a CD without the Plaintiff's knowledge, consent, or permission and tried to get Plaintiff to sign a document that made it seem as though [h]e initiated the transaction.

94. This should be deemed as an unfair trade practice by the Court and it should calculate and appropriately award the Plaintiff his actual damages under this Cause of Action.

95. This Court should further award the Plaintiff treble (3 times)  his actual damages under this count should the Court deem that the conduct was grossly negligent.

96. The Plaintiff is entitled to and seeks injunctive relief enjoining the Defendant from further violation of this part.

## CAUSE OF ACTION XI:

### (Plaintiff v. HWB)

### The Louisiana Unfair Trade Practices Act of 1972

### Louisiana Revised Statute 51: §1401 et seq.

### Enhanced Civil Penalty for Alleged Misconduct on December 6, 2018

97. The Plaintiff incorporates the allegations from all previous paragraphs as if fully set forth herein.

98. The Plaintiff alleges that MidSouth Bank unlawfully against Louisiana Laws liquidated a CD without the Plaintiff's knowledge, consent, or permission and tried to get Plaintiff to sign a document that made it seem as though [h]e initiated the transaction.

99. This should be deemed as an unfair trade practice by the Court and it should calculate and appropriately award the Plaintiff "enhanced" damages under this Cause of Action in the amount of $5,000.00 (Five Thousand U.S. Dollars) in addition to his actual damages because he is a statutorily defined disabled person under Louisiana Law.

100.    The Plaintiff is entitled to and seeks injunctive relief enjoining the Defendant from further violation of this part.

## CAUSE OF ACTION XII:

### (Plaintiff v. HWB)

### The Louisiana Unfair Trade Practices Act of 1972

### Louisiana Revised Statute 51: §1401 et seq.

### Breach of Implied Warranty for Early Closure of Accounts on December 6, 2018

101.    The Plaintiff incorporates the allegations from all previous paragraphs as if fully set forth herein.

102.    The Plaintiff was informed via U.S. Mail that he would be able to enjoy the use of his checking accounts with MidSouth Bank until about the date of December 15, 2018.

This ten (10) day premature on-the-spot closure and liquidation of the Plaintiff's accounts caused the Plaintiff harm and damages because instead of having plenty of time to put his finances in order and make arrangements with his utility companies and other auto-drafted obligators he had to make a mad-dash scramble which caused him to incur no less than $60.00 (Sixty U.S. Dollars) in mileage and over seven (7) hours on the phone with the VA benefits office to arrange for the updated financial situation.

103.     The Plaintiff alleges that this breach of implied warranty costed him approximately $165.00 (One Hundred Sixty Five U.S. Dollars) totally.

104.     The Plaintiff seeks his actual damages only under this count in the amount of $165.00 00 (One Hundred Sixty Five U.S. Dollars).

105.     The Plaintiff is entitled to and seeks injunctive relief enjoining the Defendant from further violation of this part.

## PRAYER FOR RELIEF:

**Jury Trial Demand;**

Plaintiff demands trial by jury on all issues so triable.

In regard to the Plaintiff's State Law Causes of Action Nos. VIII through XII the Plaintiff invokes Louisiana Civil Code 2324.1 which states:
"In the assessment of damages in cases of offenses, quasi offenses, and quasi contracts, much discretion must be left to the judge or jury".

**Prayer for Relief;**

WHEREFORE, Plaintiff seeks judgement in Plaintiff's favor and damages against the Defendants, based on the following requested relief:

Statutory Damages;
Actual Damages;
Treble Damages;
Stacked Damages;
Pre and or Post Judgement Interest;
Enjoinder from further violations of these parts;
Costs of litigating the action together along with all reasonable attorney's fees (if any) and court costs;
And such other and further relief as may be necessary, just and proper.

Respectfully Submitted,

X _Clinton Strange_____          11-3-2019
Clinton Strange
Pro Se                                    Dated
7021 Winburn Drive
Greenwood, LA 71033
318-423-5057
parsmllc@gmail.com